Opinion of the Court, by
Ch. J. Boyle.
CROSS bills were filed, one by Davis against Parish’s representatives and Edward Hockerdy, to compel the specific execution of a contract for the exchange of land, and the other by Parish’s representatives against Davis to obtain a rescision of the contract. The former was dismissed and the latter sustained by the decree of the court below, from which decree Davis has prosecuted this appeal.
It appears that an arrangement was verbally made between William Parish, John Davis and Edward Hockerdy, jun. to the following effect: Parish was to convey to Davis 650 acres of land in Ohio by a deed with a special warranty. Davis on his part was to convey to Hockerdy 102 acres in Clarke county, without warranty; but so as to give him recourse upon William Myers, who had sold and warranted the title to Davis; and Hockerdy was to pay Parish a certain sum of money agreed upon between them, as the price of the 102 acres. This arrangement was to be carried into effect, provided Davis liked the land in Ohio, when he saw it. Shortly after entering into it, Parish and Davis started to see the land in Ohio; but Parish taking sick on their way, proposed to Davis to reduce their agreement to writing; which was accordingly done, with this clause in it: “Provided, when Davis sees the land, he should like it; if he does not, no bargain.” After Davis had seen the land, he declared he *154 did not like it, and refused to take it upon the terms agreed on. Other terms were proposed by Davis; but Parish would not accede to them. Some days thereafter, Davis, at the request of Parish, agreed to re-view the land, as he returned from New-Jersey, where he was then going, and inform Parish, on his return to Kentucky, whether he liked the land or not. It seems, that when Davis first returned to Kentucky, he still disliked the land, and signified to Parish his unwillingness to take it on the terms they had agreed, making, at the same time, proposals for other terms. But, Parish being unwilling to trade upon such terms as were then proposed by Davis, after some attempts to induce him to do so had failed, Davis determined to take the land; and, Parish still agreeing to give it, a day was appointed when the deeds were to be executed. They, together with Hockerdy, met according to appointment. Deeds were drawn, and ready to be executed, by the consent of Parish and Davis; but the execution of them was postponed, at the instance of Hockerdy, who professed a wish to obtain counsel on the deed to be executed from Davis to him; and finally, he refused to receive the deed, being apprehensive of the goodness of Davis’ title.
From this state of facts, it is obvious, that Hockerdy was under no legal obligation to carry the contract into effect on his part. The agreement, so far as he is concerned, having never been reduced to writing, could not be enforced, were there no other objections to it. How far this circumstance is sufficient to prevent a decree for the specific execution of the contract on the part of Parish or his representatives, is a matter of some doubt. In general, where there is a contract to convey to a stranger, it will be construed to be an undertaking on the part of the person contracting to convey, that the stranger shall accept the conveyance; and an offer or tender to convey, will not be equivalent to an actual performance, as it would be, where the conveyance is to be made to a party to the contract. See Co. Litt. 209 a. If this doctrine, when applied to this case, be correct, as Hockerdy is under no legal obligation, and cannot be compelled to receive a conveyance, it is apparent that Davis cannot so perform his part of the contract, as to entitle himself to a specific execution on the part of Parish. It is, however, not material to de *155 cide upon the propriety of applying this doctrine to the present case, as we are of opinion that the contract is, on other grounds, not obligatory upon Parish or his representatives.
The written contract was to cease and become a nullity, if, when Davis saw the land in Ohio, he should not like it. When, therefore, he had viewed the land, and declared his dislike to it, the contract, by its own terms, expired; and after it had once expired, it could not be resuscitated by parol, no more than it could have been originally created by parol. This position would be too clear to admit of a question, if, instead of a few days, a few years had intervened between the expiration of the written contract and the attempt to revive it. Upon principle, however, it is evident the length of time which had elapsed can make no difference in this respect.
But an additional objection to enforcing the contract against Parish’s representatives, is to be found in the defect of Davis’ title. He has shown no regular deduction of title, either in law or equity, from the original patentee under whom he claims. On the contrary, it is established, as far as such a fact can be established by negative proof, that he is not vested with a title deducible from the patentee. This defect of title in Davis does not appear to have been known to the parties at the time of the contract; and it seems to be well settled, that where an essential defectin the title is discovered before the conveyance is executed, the vendee will not be entitled to a specific execution of the contract, although the intended covenants would not have extended to such defect. 1 Fonb. Equity, 361—2; Sugden 546, and the authorities there cited.
Decree affirmed.